UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANTONIA PALERMO,

    Plaintiff,

vs.                                    CASE NO. 6:15-cv-1375-Orl-37DAB

GRUNAU COMPANY, INC.,

    Defendant.
_____/

## PLAINTIFF PALERMO'S MEMORANDUM IN OPPOSITION TO DEFENDANT GRUNAU COMPANY'S ALTERNATIVE MOTIONS TO DISMISS OR FOR SUMMARY JUDGMENT

Plaintiff ANTONIA PALERMO opposes Defendant GRUNAU COMPANY's alternative motions to dismiss or for summary judgment (doc. 11). As discussed below, PALERMO's suit is timely because no determination of PALERMO's charge of discrimination was made within 180 days and the applicable statute of limitations is therefore Florida's 4-year statute of limitations for claims based on a statutory violation. *Joshua v. City of Gainesville*, 768 So. 2d 432 (Fla. 2000).

## BACKGROUND

PALERMO filed her complaint in state court on July 29, 2015, alleging four counts of disability discrimination and retaliation in violation of the Florida Civil Rights Act, Chapter 760, Fla. Stats. (doc. 2). On August 18, 2015 GRUNAU removed the action to this Court on the basis of diversity jurisdiction (doc. 1). On August 24, 2015 GRUNAU filed alternative motions to dismiss or for summary judgment, asserting that PALERMO's complaint is time-barred (doc.

11). This memorandum, and PALERMO's affidavit and attached exhibits, respond.

## FACTS

PALERMO was discharged by GRUNAU on August 8, 2011 (PALERMO aff. para. 2). On August 12, 2011 she obtained, completed, signed, dated and transmitted a FCHR intake information form to FCHR to initiate the charge-filing process with that agency (PALERMO aff. para. 3, 4, 5 and Ex. 1, 2). On August 16, 2011 the FCHR assigned a case number to her information, and transmitted it to the EEOC for investigation (pursuant to workshare agreement, discussed *infra* and attached to this memorandum as Exhibit A)(PALERMO aff. para. 6 and Ex. 3) Thereafter, PALERMO was requested to fill out and return EEOC Form 5 (charge form) to the EEOC, which she did on October 4, 2011 (PALERMO aff. Para. 7, 8 and Ex. 4). The charge form specifically designated the FCHR as the State Agency, and specifically stated that PALERMO wanted her charge filed with both the EEOC and the State Agency. (*Id*).

No determination of PALERMO's charge was made within 180 days. On September 28, 2012 (almost 14 months after the FCHR assigned a case number and more than 11 months after she completed EEOC Form 5), the EEOC issued a "Dismissal and Notice of Rights" which included a determination that the EEOC was "unable to conclude" that GRUNAU had violated PALERMO's statutory rights. (PALERMO aff. para. 10 and Ex. 5). This action was filed on July 29, 2015, within four years from her discharge on August 8, 2011.

## ARGUMENT

### I. PREFACE.

GRUNAU contends that PALERMO's suit is untimely because it should have been filed either within 90 days after she received the Dismissal and Notice of Rights (doc. 11 pp. 6-12) or within one year from some undisclosed date (presumably, receipt of the Dismissal and Notice of Rights, see doc. 11 pp. 12 – 14). GRUNAU is simply wrong; its alternative motions are specious;

2

and they should be summarily denied. The 90-day limitation period for filing federal claims set forth at 42 USC Sec. 2000e-5(f)(1)) does not apply to claims brought under the FCRA; and the Florida Supreme Court has dispositively determined in *Joshua, supra* that the 1-year limitations period within Section 760.11(5) does not apply if a "reasonable cause" determination of a charge filed with FCHR is not made within 180 days.

## II.  A RULE 12(b)(6) MOTION IS INAPPROPRIATE.

Without unduly quibbling over fine points, PALERMO suggests that a Rule 12(b)(6) motion is an obviously inappropriate vehicle for deciding GRUNAU's limitations defense. The purpose of a motion to dismiss is to determine whether PALERMO has stated a claim. She has. PALERMO alleged in her complaint (doc. 2 para. 21) that all conditions precedent to bringing suit have been fulfilled by timely dual-filing a charge of discrimination with FCHR and EEOC, thereby satisfying her pleading requirements (*Jackson v. Seaboard Coast Line R.R. Co.*, 678 F. 2d 992, 110 (11th Cir. 1982); GRUNAU has conceded that allegation (doc. 11 pp. 11-12: "Grunau is not asserting that . . . Plaintiff failed to exhaust her administrative remedies."); and GRUNAU has submitted a number of documents outside the four corners of the complaint which GRUNAU represents it either received from or sent to the EEOC, together with additional factual averments (Schnepper Declaration, doc. 12) which are not necessary for PALERMO to state a claim. Moreover, in order to have a complete record it is necessary to consider Palermo's affidavit plus the attached exhibits, several of which GRUNAU did not submit (i.e., Palermo's intake questionnaire sent to FCHR and FCHR's letter assigning a FCHR case number and transmitting PALERMO's information to EEOC for processing) [1] and the EEOC/FCHR workshare agreement attached to this Memorandum.. All this makes Rule 12(b)(6) an inappropriate vehicle for deciding the issue GRUNAU asserts.

---

[1] PALERMO provided these exhibits to GRUNAU before it filed its motion to dismiss.

3

While in deciding Rule 12(b)(6) motions documents outside the four corners of the complaint may be considered if they are central to plaintiff's claims (which, because GRUNAU concedes PALERMO exhausted her administrative remedies, they are not) and if authenticity is not disputed (PALERMO does not dispute the authenticity of *only* Schnepper Declaration Exhibit 1 and Exhibit 4), see, e.g., *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F. 3d 1337, 1340 n. 3 (11th Cir. 2005)), in this case GRUNAU has sought to prove an affirmative defense on which it has the burden of proof, on an issue which is not necessary to state a claim, by introducing testimony and documents far outside the four corners of the complaint. For that reason GRUNAU's 12(b)(6) motion to dismiss should be denied. GRUNAU's motion should be decided on summary judgment pursuant to Rule 56. It should also be denied.

### III. GRUNAU's RULE 56 MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED.

#### A. THE FEDERAL 90-DAY SUIT-FILING REQUIREMENT DOES NOT APPLY TO STATE LAW CLAIMS.

Incredibly, without citing any authority (because none exists), GRUNAU speciously asserts that PALERMO was required to file suit alleging a violation of the Florida Civil Rights Act within the 90-day period commencing on the date PALERMO received a right-to-sue notice from the EEOC which governs federal law claims, 42 USC Section 2000e-5(f)(1). No such thing as a 90-day suit-filing requirement is found within the FCRA; and no court has determined that the federal 90-day period applies to the FCRA.[2] GRUNAU's argument must be summarily rejected for those reasons.

---

[2] Under federal law the EEOC must make a determination before suit may be filed. Under the FCRA suit may be filed after 180 days without a determination, see *infra.*

4

GRUNAU's argument appears to be based exclusively on the facts that the FCHR referred PALERMO's complaint to the EEOC for processing, and that PALERMO signed the EEOC's charge form (Form 5) rather than a FCHR charge form, thereby subjecting her to federal limitations requirements rather than to FCRA limitations requirements (doc. 11 p. 2: "Plaintiff voluntarily signed the EEOC complaint that initiated a full investigation into her allegations . . ."). That argument makes no sense simply because a state law claim is not converted to a federal claim merely because EEOC processes a FCHR charge.

Section 760.11(1) provides that a FCRA complaint may be filed with the EEOC. Under the applicable EEOC/FCHR workshare agreement attached as Exhibit A, each agency designates the other as its agent for charge-filing; and it states that charges filed with EEOC on FCHR's behalf automatically initiates processing on behalf of both agencies (Ex. A, Sec. II A). It further provides that for dual-filed charges both agencies will use EEOC Form 5 (Ex. A, Sec. II D). Finally, it provides that processing of a charge may be referred to the other agency by agreement (Ex. A., Sec. III B). Nowhere in the FCRA or the workshare agreement does it state that if a FCHR charge is processed by EEOC it will be governed by federal suit-filing requirements (nor, conversely, that a EEOC charge processed by FCHR will be governed by state suit-filing requirements, which would negate the federal 90-day limitations period and invoke the FCRA limitations period). In short, GRUNAU simply does not understand the dual-filing process and has built its argument on a false assumption.[3]

---

[3] To the extent GRUNAU contends that PALERMO's charge was not properly dual-filed, that argument, too, is specious. Aside from the fact that GRUNAU has conceded that dual-filing occurred, the charge form PALERMO signed specifically designated the Florida Commission on Human Relations as the State FEPA agency; and it plainly states that PALERMO wanted her charge to be dual-filed with both the EEOC and the State agency.

5

Contrary to GRUNAU's false assumption, the EEOC's Dismissal and Notice of Rights (PALERMO aff. Ex. 5) plainly states that the 90-day suit-filing requirement is <u>only</u> applicable to claims arising under the federal Title VII, Americans with Disabilities Act, Genetic Information Nondiscrimination Act, and Age Discrimination in Employment Act, which PALERMO does not assert; and it further states that "The time for filing suit based on a claim under state law may be different". As discussed below, it is *completely* different. The federal 90-day suit-filing requirement is simply not applicable to PALERMO's FCRA claims.

## B. THE 1-YEAR LIMITATIONS PERIOD WITHIN SECTION 760.11(5) IS NOT APPLICABLE WHEN THE ADMINISTRATIVE AGENCY HAS FAILED TO MAKE A REASONABLE CAUSE DETERMINATION WITHIN 180 DAYS FROM CHARGE FILING.

The FCRA has its own 1-year limitations period, Section 760.11(5), which provides for the commencement of a civil action "no later than 1 year after the date of determination of reasonable cause by the commission." However, the Florida Supreme Court has conclusively held that the 1-year period is not applicable where, as here, a determination of "reasonable cause" has not been made within 180 days, as required by Section 760.11(3). Instead, Florida's 4-year statute of limitations governing statutory liability claims is applicable. *Joshua v. City of Gainesville,* 768 So. 2d 432 (Fla. 2000). There, the Florida Supreme Court clearly and conclusively held:

> "We hold that the statute of limitations for causes of action based on statutory liability, section 95.11(3)(f), applies to situations *where the Commission has not made a reasonable cause determination within 180 days."* 768 So.2d at 439 (emphasis added).

In this case no reasonable cause determination was made within 180 days. PALERMO therefore had four years within which to file her suit; and she did so. There, the inquiry ends.

GRUNAU argues that *Joshua* notwithstanding, the EEOC's Dismissal and Notice of Rights shortened the 4-year period and created a new, different, limitations period of one year (or 90 days). With all due respect, that argument is nonsense on several levels. First, if accepted GRUNAU's position would create different limitations periods for every FCRA claim where the agency did not make a reasonable cause determination within 180 days, thereby destroying the predictability which is the entire purpose of statutes of limitations. It would create a new requirement not found within the FCRA. It would mean that a claimant would be entitled to as much as 4 years if an agency made no determination at all, or to as little as 1 year (or 90 days per GRUNAU) if an agency made a determination on the 181st day. And, it would mean that if an agency made a "reasonable cause" determination after 3 years and 11 months a plaintiff would receive an extra year to file suit. *Joshua* said no such thing.

Second, GRUNAU's argument that a belated agency determination impacts the FCRA limitation period has been squarely rejected by the Florida Supreme Court, in *Woodham v. Blue Cross and Blue Shield of Florida, Inc.*, 829 So. 2d 891 (Fla. 2002). There, the plaintiff received an "unable to conclude" determination from the EEOC on a dual-filed charge more than 180 days after the charge was filed, as PALERMO did. The defendant argued that this was a "no cause" determination which required the plaintiff to pursue an administrative appeal within 35 days (Section 760.11(7)). The Court held that the "unable to conclude" determination was not a "no cause" determination under the FCRA, 829 So. 2d at 897; and it further held that even if it were, nevertheless because the determination was not made within 180 days the plaintiff was permitted to bring suit, per *Joshua*. 829 So. 2d at 898-99. It is noteworthy that the Court rejected any implication that the untimely determination either altered the *Joshua* 4-year period

7

or created a new, different, limitation period. Instead, the Court squarely held that the effect of an untimely determination was no effect at all.

Finally, GRUNAU finds its sole support for its 1-year argument in a single district court case which turned on unique facts not present here; which appears to be contrary to *Joshua;* and which in fact supports PALERMO. *Freeman v. Walgreen Co.*, 407 F. Supp. 2d 1317 (S.D. Fla. 2005). There, a plaintiff had brought suit alleging FCRA violations within 90 days of receiving a belated right to sue notice from the EEOC, voluntarily dismissed it, and refiled it over two years later. The court held that the initial filing of suit after 180 days, as if the commission had found reasonable cause, *started* the 1-year period within Section 760.11(5); and that the subsequent suit had to be commenced within 1 year. In other words, the court held that once suit was filed it could not be dismissed and recommenced more than one year later. Here, PALERMO did not file suit and dismiss it; so even under the "logic" of *Freeman* that initial filing of suit simultaneously starts and satisfies the 1-year period, see 407 F. Supp. 2d at 1320, PALERMO's 1-year "clock" did not begin to run until she filed this action. GRUNAU's attempt to grasp at the *Freeman* straw is futile.

## CONCLUSION

GRUNAU's alternative motions to dismiss or for summary judgment are completely meritless and are due to be denied. PALERMO has timely filed this action; and the Court should so conclude.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of September a true and correct copy of the foregoing has been filed electronically using the CM/ECF system which I understand will send a notice of electronic filing to Dennis M. McClelland, Esquire, dennis.mcclelland@phelps.com,

Phelps Dunbar, LLP, 100 South Ashley Drive, Suite 1900, Tampa, FL 33602 and to Joel S. Aziere, Esq. jaziere@buelowvetter.com, and Suzanne M. Glisch, Esq. sglisch@buelowvetter.com, Buelow Vetter Buikema Olson & Vliet, LLC, 20855 Watertown Road, Ste. 200, Waukesha, WI 53186.

                                      THOMAS J. PILACEK & ASSOCIATES
                                      Winter Springs Town Center
                                      158 Tuskawilla Road, Suite 2320
                                      Winter Springs, FL 32708
                                      Telephone: (407) 660-9595
                                      Facsimile: (407) 660-8343
                                      E-mail: Primary:   tpilacek@pilacek.com
                                                    Secondary:  dbrock@pilacek.com
                                                               gdavis@pilacek.com

BY: _/s/ Thomas J. Pilacek_
      Thomas J. Pilacek
      Fla. Bar No. 143576

Counsel for Plaintiff

## FY 2011 EEOC/FEPA MODEL WORKSHARING AGREEMENT

WORKSHARING AGREEMENT

BETWEEN

FLORIDA COMMISSION ON HUMAN RELATIONS

And

THE U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Miami District Office

FOR FISCAL YEAR 2011

I. INTRODUCTION

1. The <u>Florida Commissision on Human Relations</u>, hereinafter referred to as the FEPA, has jurisdiction over allegations of employment discrimination filed against employers of <u>15</u> or more employees occurring within <u>the state of Florida</u> based on <u>age, race, sex, color, marital status, religion, national origin and handicap, pursuant to the Florida Civil Rights Act of 1992, as amended(sections 760.01-760.11, Florida Statues, hereinafter referred to as FCRA</u>.

The U.S. Equal Employment Opportunity Commission, hereinafter referred to as the EEOC, has jurisdiction over allegations of employment discrimination occurring throughout the United States where such charges are based on race, color, religion, sex, or national origin, all pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000(e)) (hereinafter referred to as Title VII). The EEOC has jurisdiction to investigate and determine charges of discrimination based on age (40 or older) under the Age Discrimination in Employment Act of 1967, as amended (29 U.S.C.§ 621 et. seq.)(ADEA), for unequal wages based on sex under the Equal Pay Act of 1963, as amended (29 U.S.C.§ 206) (EPA), and over allegations of employment discrimination based on disability pursuant to Title I of the Americans with Disabilities Act of 1990, as amended (42 U.S.C. § 12101) (ADA), and over the use or acquisition of genetic information as the basis for employment decisions pursuant to Title II of the Genetic Information Nondiscrimination Act of 2008.

B. In recognition of, and to the extent of the common jurisdiction and goals of the two (2) Agencies, and in consideration of the mutual promises and covenants contained herein, the FEPA and the EEOC hereby agree to the terms of this Worksharing Agreement, which is designed to provide individuals with an efficient



procedure for obtaining redress for their grievances under appropriate <u>State</u> and Federal laws.

II. FILING OF CHARGES OF DISCRIMINATION

- A. In order to facilitate the assertion of employment rights, the EEOC and the FEPA each designate the other as its agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the agency that initially receives the charges. The EEOC's receipt of charges on the FEPA's behalf will automatically initiate the proceedings of both the EEOC and the FEPA for the purposes of Section 706 (c) and (e) (1) of Title VII. This delegation of authority to receive charges does not include the right of one Agency to determine the jurisdiction of the other Agency over a charge. Charges can be transferred from one agency to another in accordance with the terms of this agreement or by other mutual agreement.

- B. The FEPA shall take all charges alleging a violation of Title VII, the ADEA, the EPA, GINA or the ADA where both the FEPA and the EEOC have mutual jurisdiction, or where the EEOC only has jurisdiction, so long as the allegations meet the minimum requirements of those Acts, and for charges specified in Section III. A. 1. below, refer them to the EEOC for initial processing.

- C. Each Agency will inform individuals of their rights to file charges directly with the other Agency and or assist any person alleging employment discrimination to draft a charge in a manner that will satisfy the requirements of both agencies to the extent of their common jurisdiction.

    Normally, once an agency begins an investigation, it resolves the charge. Charges may be transferred between the EEOC and the FEPA within the framework of a mutually agreeable system. Each agency will advise Charging Parties that charges will be resolved by the agency taking the charge except when the agency taking the charge lacks jurisdiction or when the charge is to be transferred in accordance with Section III (DIVISION OF INITIAL CHARGE-PROCESSING RESPONSIBILITIES).

- D. For charges that are to be dual-filed, each Agency will use EEOC Charge Form 5 (or alternatively, an employment discrimination charge form which within statutory limitations, is acceptable in form and content to the EEOC and the FEPA) to draft charges. When a charge is taken based on disability, the nature of the disability shall not be disclosed on the face of the charge. *(If applicable state statute or local ordinance requires such disclosures, this sentence may be deleted.)*

    *(More specific instructions depending on District Office/FEPA procedures should also be included here.)*

- E. Within ten calendar days of receipt, each Agency agrees that it will notify both the Charging Party and the Respondent of the dual-filed nature of each such charge it receives for initial

processing and explain the rights and responsibilities of the parties under the applicable Federal, State, or Local statutes.

III. DIVISION OF INITIAL CHARGE-PROCESSING RESPONSIBILITIES

In recognition of the statutory authority granted to the FEPA by Section 706(c) and 706(d) of Title VII as amended; and by Title I of the Americans with Disabilities Act, and the transmittal of charges of age discrimination pursuant to the Age Discrimination in Employment Act of 1967, the primary responsibility for resolving charges between the FEPA and the EEOC will be divided as follows:

A. The EEOC and the FEPA will process all Title VII, ADA, GINA, and ADEA charges that they originally receive.

   1. For charges originally received by the EEOC and/or to be initially processed by the EEOC, the FEPA waives its right of exclusive jurisdiction to initially process such charges for a period of 60 days for the purpose of allowing the EEOC to proceed immediately with the processing of such charges before the 61st day.

      In addition, the EEOC will initially process the following charges:

      -- All Title VII, ADA, and concurrent Title VII/ADA charges jurisdictional with the FEPA and received by the FEPA 240 days or more after the date of violation;

      -- All disability-based charges that may not be resolved by the FEPA in a manner consistent with the ADA.

      -- All concurrent Title VII/EPA charges;

      -- All charges against the FEPA or its parent organization where such parent organization exercises direct or indirect control over the charge decision-making process;

      -- All charges filed by EEOC Commissioners;

      -- Charges also covered by the Immigration Reform and Control Act;

      -- Complaints referred to the EEOC by the U.S. Department of Justice, Office of Federal Contract Compliance Programs, or Federal fund-granting agencies under 29 CFR § 1640, 1641, and 1691.

      -- Any charge where the EEOC is a party to a Conciliation Agreement or a Consent Decree that, upon mutual consultation and agreement, is relevant to the disposition of the charge. The EEOC will notify the FEPA of all Conciliation Agreements and Consent Decrees that have features relevant to the disposition of subsequent charges;

      -- Any charge alleging retaliation for filing a charge with the EEOC or for cooperating with the EEOC; and

-- All charges against Respondents that are designated for initial processing by the EEOC in a supplementary memorandum to this Agreement.

-- ***(Add additional provisions specific to District Office here)***

2. The FEPA will initially process the following types of charges:

   -- Any charge alleging retaliation for filing a charge with the FEPA or cooperating with the FEPA;

   -- Any charge where the FEPA is a party to a Conciliation Agreement or a Consent Decree that, upon mutual consultation and agreement, is relevant to the disposition of the charge. The FEPA will provide the EEOC with an on-going list of all Conciliation Agreements and Consent Decrees that have features relevant to the disposition of subsequent charges;

   -- All charges that allege more than one basis of discrimination where at least one basis is not covered by the laws administered by the EEOC but is covered by the FEPA Ordinance, or where the EEOC is mandated by federal court decision or by internal administrative EEOC policy to dismiss the charge, but the FEPA can process that charge.

   -- All charges against Respondents that are designated for initial processing by the FEPA in a supplementary memorandum to this Agreement; and

   -- All disability-based charges against Respondents over which the EEOC does not have jurisdiction.

   (Add additional provisions specific to the FEPA here.)

B. Notwithstanding any other provision of the Agreement, the FEPA or the EEOC may request to be granted the right to initially process any charge subject to agreement of the other agency. Such variations shall not be inconsistent with the objectives of this Worksharing Agreement or the Contracting Principles.

C. Each Agency will on a quarterly basis notify the other of all cases in litigation and will notify each other when a new suit is filed. As charges are received by one Agency against a Respondent on the other Agency's litigation list a copy of the new charge will be sent to the other Agency's litigation unit within working days.

IV. EXCHANGE OF INFORMATION

A. Both the FEPA and the EEOC shall make available for inspection and copying to appropriate officials from the other Agency any information that may assist each Agency in carrying out its responsibilities. Such information shall include, but not necessarily be limited to, investigative files, conciliation

>    agreements, staffing information, case management printouts, charge processing documentation, and any other material and data as may be related to the processing of dual-filed charges or administration of the contract. The Agency accepting information agrees to comply with any confidentiality requirements imposed on the agency providing the information. With respect to all information obtained from the EEOC, the FEPA agrees to observe the confidentiality provisions of Title VII, the ADEA, the ADA and GINA.

>    B.   In order to expedite the resolution of charges or facilitate the working of this Agreement, either Agency may request or permit personnel of the other Agency to accompany or to observe its personnel when processing a charge.

V.   RESOLUTION OF CHARGES

>    A.   Both agencies will adhere to the procedures set out in the EEOC's State and Local Handbook, including current revisions thereto.

>    B.   For the purpose of according substantial weight to the FEPA final finding and order, the FEPA must submit to the EEOC copies of all documents pertinent to conducting a substantial weight review; the evaluation will be designed to determine whether the following items have been addressed in a manner sufficient to satisfy EEOC requirements; including, but not limited to:

>>        1.   jurisdictional requirements,

>>        2.   investigation and resolution of all relevant issues alleging personal harm with appropriate documentation and using proper theory,

>>        3.   relief, if appropriate,

>>        **4.**   mechanisms for monitoring and enforcing compliance with all terms of conciliation agreements, orders after public hearing or consent orders to which the FEPA is a party.

>    C.   In order to be eligible for contract credit and/or payment, submissions must meet all the substantive and administrative requirements as stipulated in the Contracting Principles.

>    D.   For the purposes of determining eligibility for contract payment, a final action is defined as the point after which the charging party has no administrative recourse, appeal, or other avenue of redress available under applicable State and Local statutes.

VI.  IMPLEMENTATION OF THE WORKSHARING AGREEMENT

>    A.   Each agency will designate a person as liaison official for the other agency to contact concerning the day-to-day implementation for the Agreement. The liaison for the FEPA will be <u>Derick Daniel, Director</u>. The liaison official for the EEOC will be <u>Ina Depaz, State & Local Coordinator.</u>

B.  The agencies will monitor the allocation of charge-processing responsibilities as set forth in the Agreement. Where it appears that the overall projection appears inappropriate, the appropriate portions of this Agreement will be modified to ensure full utilization of the investigation and resolution capacities of the FEPA and rapid redress for allegations of unlawful employment discrimination.

C.  The EEOC will provide original forms to be copied by the FEPA, in accordance with the Regulations and the Compliance Manual to be used by the FEPAs in correspondence with Charging Parties and Respondents.

D.  If a dispute regarding the implementation or application of this agreement cannot be resolved by the FEPA and District Office Director, the issues will be reduced to writing by both parties and forwarded to the Director of the Office of Field Programs for resolution.

E.  This Agreement shall operate from the first day of October 2010 to the thirtieth day of September 2011 and may be renewed or modified by mutual consent of the parties.

I have read the foregoing Worksharing Agreement and I accept and agree to the provisions contained therein.

Date 9/24/10 _____,
Delner Franklin-Thomas, District Director
U.S. Equal Employment Opportunity Commission
Miami District Office

Date 9-14-10 _____,
Derick Daniel, Director
Florida Commission on Human Relations